BRET O. WHIPPLE, ESQ.
Nevada Bar 6168
BANKRUPTCY LAW CENTER
520 Sinclair St., Reno, NV
(775) 746-3333

John White, Esq., SB #1741
WHITE LAW CHARTERED
335 West First Street
Reno, NV 89503
775-322-8000
775-322-1228 (Fax)
john@whitelawchartered.com

Proposed Co-counsel for Debtor

E-filed on November 2, 2011

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re:

VAN JEFFERY GARDNER
dba Quarter Circle Five Ranch

Debtor.

CASE NO.: BK-N-11-52516-btb

Chapter 12

CHAPTER 12 PLAN #1, VALUATION
MOTION, AND MOTION TO CONFIRM

Hearing date: December 6, 2011
Hearing time: 3:00 p.m.
Est. Time: 1 hour

## CHAPTER 12 PLAN

VAN JEFFERY GARDNER, dba Quarter Circle Five Ranch ("Debtor") submits the

following Chapter 12 Plan pursuant to section 1221 of the Bankruptcy Code.

    1.   Definitions:

        a.   "Allowed Claim" means every Claim against Debtor as to which a proof

of claim has been filed with the Court within the time fixed by the Court

or otherwise deemed timely filed under applicable law, or, if such Claim

arises from the Debtor's rejection of an unexpired lease or other

WHITE LAW
CHARTERED
20TH CENTURY BLDG
RENO, NV 89503
T (775) 322-8000
F (775) 322-1228

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG
335 W. FIRST STREET
RENO, NV 89503
T (775) 322-8000
F (775) 322-1228

executory contract, within thirty (30) days after the Effective Date of the

Plan, and as to which no objection to allowance of such Claim or request

for subordination thereof has been filed within any applicable period

fixed by the Court or as to which an order allowing such Claim and

establishing priority has become final and non-appealable.

b.    "Claim" shall have the meaning ascribed to it in 11 USC 101(5) and shall

include, without limitation, any claim scheduled in this Plan, whether or

not filed.

c.    "Confirmation Date" shall mean the date of any Order of this Court

confirming the Plan.

d.    "Effective Date" shall mean the 11th day following entry of an Order of

confirmation, unless there be a timely appeal, in which event the

Effective Date shall be the 11th day following the day when the entry of

an Order affirming the confirmation of this Plan becomes final and non-

appealable.

e.    "General Unsecured Creditors" means creditors holding Allowed Class 2

Claims.

f.    "Homestead" means Debtor's home and adjacent buildings, being APN

11-350-03, an approximate 4.5 acre parcel more particularly described as

The West 155.00 feet of the East 305 feet of the SW1/4 of the NE¼ of

Section 17, Township 12 North, Range 62 East, M.D.B.&M.

g.    "Petition Date" means August 4, 2011.

h.    "Plan" shall mean Debtor's Chapter 12 Plan, as it may be amended from

time to time prior to confirmation.

2

i.  "Plan Period" shall mean either the three-year period following the first payment made by Debtor pursuant to this Plan, or the date on which all Allowed Claims are paid in full, whichever is earlier.

j.  "Quarter Circle Five Ranch" shall mean Debtor, and Debtor as sole remaining partner and sole owner of 100% of the assets of Quarter Circle Five Ranch, a dissolved Nevada partnership.  Though some portions of Debtor's real property may still be titled in the name of Quarter Circle Five Ranch or Quarter Circle Five Ranch, a partnership, such title is bare legal title.  All of the equitable interest in any property still titled in the name of Quarter Circle Five Ranch, a partnership, belongs to Debtor.

k.  "Ranch" shall mean all of Debtor's real property being parcels 1, 2, 3, 4, 5, 6, 7, 8, 9, 10 and 11, excluding Debtor's 4.5 acre homestead, as shown on the October 4, 2011 Stewart Title Preliminary Title Report ("Preliminary Title Report"), attached hereto as Exhibit A.  Without limitation, "Ranch" shall include Debtor's interest in parcels 10 and 11, being property of the estate still titled in the name of Quarter Circle Five Ranch, a partnership and "Ranch" also includes Debtor's interest in the Horse and Cattle Camp, being Debtor's 16.174% interest in the 680 +/- acres shown on the Preliminary Title Report as Parcels 8 and 9.  "Ranch" also includes the watering system (pivots, pipes and pumps) thereon. Debtor's Homestead, a separate parcel (APN 11-350-03), is included in the "Ranch."  Parcel 12 is not property of the estate and therefore "Ranch" does not include Parcel 12.

WHITE LAW
CHARTERED
LAWYERS
20th CENTURY BLDG
335 W. FIRST STREET
RENO, NV 89503
T (775) 322-8000
F (775) 322-1228

1. "Secured Claim" means a Claim, other than a set off Claim, that arose before or after the Petition Date that is secured by a security interest in or lien upon property, or the proceeds of the sale of such property, in which the Debtor or the estate has an interest, to the extent of the value, as of the Confirmation Date or such later date as established by the Court, of such interest or lien as determined by a Final Order of the Court pursuant to Section 506 of the Bankruptcy Code. An Allowed Secured Claim will include all accrued interest and attorney's fees, to the extent the same are allowable under 11 U.S.C. § 506, and to the extent attorneys' fees are reasonable or are approved by the Court after notice and hearing.

   m.  "Secured Creditor" means a creditor holding an Allowed Secured Claim.

   n.  "Trustee" shall mean M. Nelson Enmark, or such other person who is duly appointed as the standing Chapter 12 trustee in the District of Nevada.

2. Debtor shall, during the Plan Period, submit all or such portion of his future earnings or other future income to the supervision and control of the Trustee as is necessary for the execution of the Plan. Debtor will receive a salary of $1,500 per month during the Plan Period.

3. All Claims entitled to priority under Section 507 of the Bankruptcy Code ("Section 507"), shall be paid in full, in deferred cash payments, unless—

   a.  the claim is a Claim owed to a governmental unit that arises as a result of the sale, transfer, exchange, or other disposition of any farm asset used in the debtor's farming operation, in which case, the Claim shall be treated as an unsecured Claim that is not entitled to priority under Section 507,

WHITE LAW
CHARTERED
20TH CENTURY LAWYERS
335 W. FIRST STREET
RENO, NV 89503
T (775) 322-8000
F (775) 322-1228

4

but the debt shall be treated in such manner only if the debtor receives a discharge; or

b. the holder of a particular Claim agrees to a different treatment of that Claim.

4. Claims shall be divided into four secured classes, one unsecured class and one class of interests. Each Secured Claim is its own class. Each Claim or interest within a particular class shall be treated the same unless the holder of a particular Claim or interest agrees to less favorable treatment. Plan classes are as follows:

a. Secured.

i. Class 1(a): First National Bank of Ely's Claim as holder of a note dated January 14, 2002, in the face amount of $200,000 (loan number 19981), secured by a first deed of trust on Debtor's approximately 4.5 acre homestead (APN 11-350-03), recorded in White Pine County Nevada as Book 337 Page 513, the unpaid balance of of which was approximately $182,000 as of the Petition Date.

ii. Class 1(b): First National Bank of Ely's claim as holder of a note dated March 11, 2010, in the face amount of $160,076.44 (loan number 20913), secured by a second deed of trust on Debtor's approximately 5-acre homestead (APN 11-350-03), recorded in White Pine County Nevada as Doc #0348259, the unpaid balance of of which was approximately $160,000.00 on the Petition Date.

WHITE LAW CHARTERED
LAWYERS
20TH CENTURY BLDG.
335 W. FIRST STREET
RENO, NV 89503
T (775) 322-8000
F (775) 322-1228

iii.  Class 1(c): First National Bank of Ely's Claim as judgment creditor under that certain Deficiency Judgment issued by the Seventh Judicial District Court of White Pine County, Nevada, entered on April 21, 2011 and recorded on April 28, 2011, official records, White Pine County, as Document No. 352831. See Item 31 on the Preliminary Title Report.

iv.  Class 1(d): Margaret Gardner.  This approximate $80,000 Claim is secured by a June 17, 2011 commercial security agreement.  See Item 32 (Document 353410) in the Preliminary Title Report.

b.  Class 2. General Unsecured Claims.

c.  Class 3. Interests

5.  Claims entitled to priority under Section 507 shall not be classified but shall be paid in full over the life of the Plan or as otherwise provided in Title 11.

6.  Treatment of Claims:

a.  Secured Claims.

i.  Class 1(a): First National Bank of Ely's Class 1(a) Claim shall be paid in full, to the extent that it is an Allowed Secured Claim.  The note shall be brought current and any deficiency shall be deemed cured and the note deaccelerated on the Effective Date. Debtor shall thereafter resume making contract payments directly to the First National Bank of Ely.

ii.  Class 1(b).  First National Bank of Ely's Class 1(b) Claim is disallowed as a Secured Claim.  The fair market value of

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG.
335 W. FIRST STREET
RENO, NV 89503
T (775) 322-8000
F (775) 322-1228

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG
335 W. FIRST STREET
RENO, NV 89503
T (775) 322-8000
F (775) 322-1228

Debtor's Homestead is $175,000, an amount less than the

unpaid balance of First National Bank of Ely's Class 1(a)

Claim, also secured by Debtor's Homestead. Therefore, First

National Bank of Ely's Class 1(b) Claim is completely

unsecured and shall be treated as a Class 2 (General

Unsecured Claim) under this Plan.

iii.    Class 1(c). First National Bank of Ely's Class 1(c) judgment

creditor Claim, to the extent it is an Allowed Secured Claim,

shall be paid in full from the Net Proceeds of the sale of the

Ranch. See below. To the extent that Net Proceeds are

insufficient to fully pay this Claim, the deficiency shall be

treated as a General Unsecured Claim and paid pursuant to

Class 2.

iv.    Class 1(d). This Claim is based on a preferential transfer

under 11 USC 547. It is disallowed. Class 1(d) has the rights

of a General Unsecured Class 2 Creditor under this Plan.

v.    Confirmation of this Plan shall constitute an adjudication that

First National Bank of Ely, including its successors and

assigns, has no encumbrance(s) on the Ranch except as

described in Class 1(a), Class 1(b) and Class 1(c), above, to

wit: any lien or encumbrance or obligation of Debtor of any

nature relating to Debtor's ownership of the Ranch inuring to

the benefit of First National Bank of Ely, its successors or

assigns, as well as any obligation of the Debtor to First

7

National Bank of Ely, which is not described above in Class 1(a), Class 1(b) or Class 1(c), shall be void as of the Effective Date. Without limitation, this includes Items 29 (Document 347460) and 30 (Document 352624) in the Preliminary Title Report.

b.   General Unsecured Secured Claims:

    i.   Class 2.   Allowed General Unsecured Claims shall be deemed to have been paid in full from the Net Proceeds from the sale of the Ranch, described below, after payment of 1) Plan payments on all Allowed Secured Claims, 2) Trustee's fees, and 3) allowed administrative expenses. Sums paid to the Trustee on behalf of this Class shall be distributed by the Trustee.

c.   Interests.

    i.   Class 3.   The equity interest of Debtor is not impaired by the Plan.

7.   All monetary defaults have been considered in the Plan.  All such defaults shall be deemed cured on confirmation of the Plan.

8.   Debtor shall have up to 45 days following the Effective Date to object to Claims.

9.   All executory contracts not specifically dealt with by this Plan are hereby rejected.

10. All property of the estate shall vest in the Debtor on confirmation of the Plan.

11. Allowed administrative expenses, including statutory Trustee fees, shall be paid in full from the proceeds of the sale of the Ranch, described below.

WHITE LAW
CHARTERED
LAWYERS
335 W FIRST STREET
20th CENTURY BLDG
RENO, NV 89503
T (775) 322-8000
F (775) 322-1228

WHITE LAW
CHARTERED
20TH CENTURY BLDG
335 W FIRST STREET
RENO, NV 89503
T (775) 322-8000
F (775) 322-1228

12. Debtor Reports. Unless excused by the Trustee, Debtor shall prepare and file a complete Return of Sale, concerning the sale described below, within 45 days of the Effective Date, showing the disbursement of sale proceeds.

13. FAILURE OF CREDITOR(S) TO FILE A TIMELY WRITTEN OBJECTION TO THIS PLAN PRIOR TO CONFIRMATION SHALL CONSTITUTE ACCEPTANCE OF THE PLAN.

14. Subject to the provisions of 11 U.S.C. §502, untimely Claims are disallowed, without the need for formal objection, unless allowed by court order. The claims bar date is November 30, 2011.

15. This Plan may be altered post confirmation in a non-material manner by court order after notice to the debtor, the Trustee, any creditor, whose Claim is the subject of the modification, and any interested party who has requested special notice. The Plan may also be modified post-confirmation as provided in 11 U.S.C. § 1229.

16. Post-petition interest on all unsecured Claims is disallowed.

17. Unless objected to at or before the first date set for the confirmation hearing of this Plan, the fair market value of the Debtor's Ranch, including pivots, shall be fixed at $1,031,500.00. The fair market value of Debtor's other assets which are subject to the Claim(s) of a creditor with an Allowed Secured Claim shall be fixed as follows for purposes of administration of this Plan:

| Item | Fair Market Value |
|---|---|
| Homestead | $175,000.00 |
| All of Debtor's other assets are unencumbered. | |

WHITE LAW
CHARTERED
LAWYERS
20th CENTURY BLDG
335 W. FIRST STREET
RENO, NV 89503
T (775) 322-8000
F (775) 322-1228

18. Sale of Ranch

    a.  Debtor shall, on the Effective Date, sell the Ranch to Michael
Cannon, free and clear of liens, for $1,031,500 cash. Any order
Confirming the Plan shall contain standard language, if any,
required by the escrow company to consummate the sale.

    b.  Any liens and encumbrances on the Ranch shall, subject to the
provisions of this Plan, be transferred to the Net Proceeds of the
sale. "Net Proceeds" shall be sale proceeds minus normal closing
costs, any broker's commission to Kenna Almburg which Debtor
may have to pay (Buyer is expected to pay Broker's commission),
and any applicable Federal or State taxes, Net Proceeds shall be
held by the Trustee, subject to the provisions of this Plan and any
order of this Court.

    c.  The sale is subject to the condition that appraiser Lyn Norberg
appraise the Ranch for at least $1,025,000.  Though the formal
appraisal is expected shortly before Thanksgiving, a letter
containing Mr. Norberg's valuation of the ranch is expected on or
before November 4, 2011.  This Plan will be supplemented with
that letter when it is received.

VALUATION MOTION

19. The debtor moves this honorable Court for an order fixing the fair market value of
the Ranch, and the Homestead, for purposes of confirmation and administration of
this Plan, at the dollar amount(s) provided in paragraph 17, above.

WHEREFORE DEBTOR PRAYS:

1. That the Plan be confirmed;

2. That the Ranch and Homestead be valued as provided herein; and

3. For such other and further relief as is proper.

Dated November 2, 2011.

VAN JEFFREY GARDNER
dba Quarter Circle Five Ranch

see attached
Van Jeff Gardner, Debtor

Submitted by:

BANKRUPTCY LAW CENTER

By:    /s/ Bret Whipple
        Bret Whipple, Esq.

and WHITE LAW CHARTERED

By: _____
John White, Esq.
Proposed Co-Counsel for the Debtor

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG.
335 W. FIRST STREET
RENO, NV 89503
T (775) 322-8000
F (775) 322-1228

1. That the Plan be confirmed;

2. That the Ranch and Homestead be valued as provided herein; and

3. For such other and further relief as is proper.

Dated November 2, 2011.

VAN JEFFREY GARDNER
dba Quarter Circle Five Ranch

Van Jeff Gardner, Debtor

Submitted by:

BANKRUPTCY LAW CENTER

By: _/s/ Bret Whipple_
      Bret Whipple, Esq.

and WHITE LAW CHARTERED

By: _____
      John White, Esq.
      Proposed Co-Counsel for the Debtor

11

INDEX OF EXHIBITS

Exhibit A.    10/24/2011 Stewart Title Preliminary Title Report

17 pages

CERTIFICATE OF SERVICE

I hereby certify under penalty and pain of perjury that I am an employee of White Law Chartered and that on the date shown below, I served a true and correct copy of the aforesaid:

CHAPTER 12 PLAN #1, VALUATION MOTION, AND MOTION TO CONFIRM

☑    a. Via the Court's ECF System on November 2, 2011 to:

LOUIS M. BUBALA on behalf of Creditor FIRST NATIONAL OF ELY
lbubala@armstrongteasdale.com, bsalinas@armstrongteasdale.com

JANET L. CHUBB on behalf of Creditor FIRST NATIONAL OF ELY
bsalinas@armstrongteasdale.com

M. NELSON ENMARK
nenmark.trustee@gmail.com

BRET O. WHIPPLE on behalf of Debtor VAN GARDNER
elisabethblc@yahoo.com;yeseniajlc@yahoo.com

JOHN WHITE on behalf of debtor VAN GARDNER
bankruptcy@whitelawchartered.com,
john@whitelawchartered.com;jen@whitelawchartered.com

and any and all other parties in interest who are noticed by the Court's ECF System.

The undersigned further affirms that the foregoing is true and correct to the best of my knowledge and that preceding document does not contain the Social Security number of any person.

Dated: November 2, 2011.

_John White_

12

WHITE LAW
CHARTERED
LAWYERS
335 W. FIRST STREET
20TH CENTURY BLDG
RENO, NV 89503
T (775) 322-8000
F (775) 322-1228

EXHIBIT A

ALTA Commitment (6/17/06)

**ALTA Commitment Form**

**COMMITMENT FOR TITLE INSURANCE**

**Issued by**

# stewart
— title guaranty company

STEWART TITLE GUARANTY COMPANY, A Texas Corporation ("Company"), for a valuable consideration, commits to issue its policy or policies of title insurance, as identified in Schedule A, in favor of the Proposed Insured named in Schedule A, as owner or mortgagee of the estate or interest in the land described or referred to in Schedule A, upon payment of the premiums and charges and compliance with the Requirements; all subject to the provisions of Schedules A and B and to the Conditions of this Commitment.

This Commitment shall be effective only when the identity of the Proposed Insured and the amount of the policy or policies committed for have been inserted in Schedule A by the Company.

All liability and obligation under this Commitment shall cease and terminate six months after the Effective Date or when the policy or policies committed for shall issue, whichever first occurs, provided that the failure to issue the policy or policies is not the fault of the Company.

The Company will provide a sample of the policy form upon request.

This commitment shall not be valid or binding until countersigned by a validating officer or authorized signatory.

IN WITNESS WHEREOF, Stewart Title Guaranty Company has caused its corporate name and seal to be hereunto affixed by its duly authorized officers on the date shown on Schedule A.

Senior Chairman of the Board

Chairman of the Board

President

Countersigned by:

Authorized Countersignature

Stewart Title of Nevada Holdings, Inc.-
Northeastern Division

004-UN ALTA Commitment (6/17/06)

File No. 1042858-27

# stewart
— title guaranty company

ALTA Commitment (6/17/06)

Order Number: 1042858-27

# CONDITIONS

1.  The term mortgage, when used herein, shall include deed of trust, trust deed, or other security instrument.

2.  If the proposed Insured has or acquires actual knowledge of any defect, lien, encumbrance, adverse claim or other matter affecting the estate or interest or mortgage thereon covered by this Commitment other than those shown in Schedule B hereof, and shall fail to disclose such knowledge to the Company in writing, the Company shall be relieved from liability for any loss or damage resulting from any act of reliance hereon to the extent the Company is prejudiced by failure to so disclose such knowledge. If the proposed Insured shall disclose such knowledge to the Company, or if the Company otherwise acquires actual knowledge of any such defect, lien, encumbrance, adverse claim or other matter, the Company at its option may amend Schedule B of this Commitment accordingly, but such amendment shall not relieve the Company from liability previously incurred pursuant to paragraph 3 of these Conditions and Stipulations.

3.  Liability of the Company under this Commitment shall be only to the named proposed Insured and such parties included under the definition of Insured in the form of policy or policies committed for any only for actual loss incurred in reliance hereon in undertaking in good faith (a) to comply with the requirements hereof, or (b) to eliminate exceptions shown in Schedule B, or (c) to acquire or create the estate or interest or mortgage thereon covered by this Commitment. In no event shall such liability exceed the amount stated in Schedule A for the policy or policies committed for and such liability is subject to the insuring provisions, the Conditions and Stipulations, and the Exclusions from Coverage of the form of policy or policies committed for in favor of the proposed Insured which are hereby incorporated by reference and are made a part of this Commitment except as expressly modified herein.

4.  This Commitment is a contract to issue one or more title insurance policies and is not an abstract of title or a report of the condition of title. Any action or actions or rights of action that the proposed Insured may have or may bring against the Company arising out of the status of the title to the estate or interest or the status of the mortgage thereon covered by this Commitment must be based on and are subject to the provisions of this Commitment.

5.  The policy to be issued contains an arbitration clause. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. You may review a copy of the arbitration rules at www.alta.org.



title guaranty company

ALTA Commitment (6/17/06)

**COMMITMENT FOR TITLE INSURANCE**
**SCHEDULE A**

**File No.:** 1042858-27

1. **Effective Date:** October 24, 2011 at 7:30 a.m.

2. **Policy or Policies To Be Issued:**
   **(a) A.L.T.A. Owner's**                                        **Amount of Insurance**
   **Proposed Insured:**              (Standard)                   $1,206,500.00

   Michael Cannon and Jennifer Cannon

   **(b) A.L.T.A. Loan**

3. **The estate or interest in the land described or referred to in this Commitment and covered herein is:**
   A fee

4. **Title to said land is at the effective date hereof vested in:**

   VAN JEFFREY GARDNER

   PARCEL 10 and 11:

   QUARTER CIRCLE FIVE RANCH, a Nevada partnership

   PARCEL 12:

   VAN C. GARDNER and MARGARET A. GARDNER, husband and wife

   PARCELS 1, 2, 3, 4, 5, 6, 7, 8 and 9:

5. **The land referred to in this Commitment is described as follows:**

   The land referred to herein is situated in the State of Nevada, County of White Pine, described as follows:

   PARCEL 1:

   That portion of Lots 8 and 9 in Block 4-A of the Preston Ten Acre Plat Survey, situate in the SE1/4 of Section 18, TOWNSHIP 12 NORTH, RANGE 62 EAST, M.D.B.&M., described as follows:

Beginning at the Northwest Corner of Lot 8 in Block 4-A of the Preston Ten Acre Plat Survey; thence in an easterly direction 660 feet to the Northeast Corner of Lot 8;

THENCE in a southerly direction 1,320 feet to the Southeast Corner of Lot 9 in Block 4-A of the Preston Ten Acre Plat Survey;

THENCE in a northwesterly diagonal direction to the point of beginning.

EXCEPTING THEREFROM the following described property:

All that certain real property situate in the County of White Pine, State of Nevada, more particularly described as follows:

Beginning at a point in Lot 8, Block 4-A of the Preston Ten Acre Plat Survey in Section 18, TOWNSHIP 12 NORTH, RANGE 62 EAST, M.D.B.&M., said point (designated Corner No. 1) bearing South 69°17'42" West, 93.33 feet from the Northeast Corner of said Lot 8 (the North boundary of Lot 8 being common with the E-W 1/4 line of Section 18);

THENCE South 208.71 feet to Corner No. 2;

THENCE West 208.71 feet to Corner No. 3;

THENCE North 208.71 feet to Corner No. 4;

THENCE East 208.71 feet to Corner No. 1, the point of beginning.

PARCEL 2:

All of Lots 12, 13, 14 and 15, in Block 6-A of the Lund Ten Acre Plat Survey, situate in the E1/2E1/2 of Section 31, TOWNSHIP 12, NORTH, RANGE 62 EAST, M.D.B.&M.

PARCEL 3:

TOWNSHIP 11 NORTH, RANGE 62 EAST, M.D.B.&M.

Section 30: NE1/4NW1/4; NW1/4NW1/4; NW1/4NE1/4;
Section 19: E1/2SW1/4; S1/2SE1/4NW1/4;

All of Lots 1, 2, 3 and 4, in Block 7A, in the Lund Ten-Acre Plat Survey, County of White Pine, State of Nevada.

All of Lots 7, 8, 9 and 10, in Block 1, on the Lund Ten-Acre Plat Survey, County of White Pine, State of Nevada.

PARCEL 4:

The Northeast quarter of the Northeast quarter of Section 17, TOWNSHIP 12 NORTH, RANGE 62 EAST, M.D.B.&M., except the South 1,095.00 feet of the West 660 feet thereof, the Southeast quarter of the Northeast quarter of said Section 17, and the East 395 feet of the Southwest quarter of the Northeast quarter of said Section 17 except the North 485 feet and the South 755 feet of the West 90.00 feet thereof.

The North 150.00 feet of Lot 15, in Block 9, in the Lund Ten-Acre Plat Survey, County of White Pine, State of Nevada.

The North 150.00 feet of Lot 16, excepting the East 125 feet thereof, in Block 9, in the Lund Ten-Acre Plat Survey, County of White Pine, State of Nevada.

All of Lots 1, 2, 3, 4 and 5, in Block 10, in the Lund Ten-Acre Plat Survey, County of White Pine, State of Nevada.

Parcel 3 as shown on that certain Parcel Map for Quarter Circle Five Ranch filed in the office of the County Recorder of White Pine County, State of Nevada, on April 28, 2005, as File No. 325613, being a portion of Lot 4 and 5, in Block 14, in Lund Ten-Acre Plat Survey..

EXCEPTING FROM Parcel 4 all minerals of every kind, including oil and gas, lying in and under said land.

PARCEL 5:

The North 135 feet of Lot 1, Block 8, in the Lund Ten-Acre Plat Survey, County of White Pine, State of Nevada.

The North 85 feet of Lot 2, Block 8, in the Lund Ten-Acre Plat Survey, County of White Pine, State of Nevada.

The North 160 feet of Lot 3, Block 8, in the Lund Ten-Acre Plat Survey, County of White Pine, State of Nevada.

All of Lots 1, 2, 3, 4, 12, 13 and 14, in Block 9, in the Lund Ten-Acre Plat Survey, County of White Pine, State of Nevada.

All of Lot 16, except the North 150 feet of the West 585 feet thereof, in Block 9, in the Lund Ten-Acre Plat Survey, County of White Pine, State of Nevada.

PARCEL 6:

The West 7.7 rods of Lot 2, in Block 11, in the Lund Ten-Acre Plat Survey, County of White Pine, State of Nevada.

The West 7.7 rods of Lots 2 and 3 in Block 12, in the Lund Ten-Acre Plat Survey, County of White Pine, State of Nevada.

The West 7.7 rods of the North 30 rods of Lot 5, in Block 13, in the Lund Ten-Acre Plat Survey, County of White Pine, State of Nevada.

EXCEPTING FROM Parcel 6 all minerals of every kind, including oil and gas, lying in and under said land.

PARCEL 7:

All of the West 1/2 of Lot 10 and the West 1/2 of Lot 11, Block 6A, Lund 10 acre plat survey, County of White Pine, State of Nevada.

Lots 1 and 16 of Block 6A, Lund Ten Acre Plat being a part of Section 31, Township 12 North, Range 62 East, M.D.B.&M.

PARCEL 8:

An undivided one-sixth interest in a .242614 undivided interest in the hereinafter described property:

TOWNSHIP 12 NORTH, RANGE 65 EAST, M.D.B.&M.

Section 17: E1/2SE1/4; (South Horse Camp Spring)
Section 21: SE1/4NE1/4; SE1/4NW1/4; (Buck Spring #1, #2, #3)
Section 22: SE1/4SW1/4; (Rock Spring)
Section 26: NE1/4SW1/4; (Virgindale Spring #1)
Section 28: SW1/4SE1/4;
Section 35: SE1/4NW1/4; (Stinging Nettle Spring)

TOWNSHIP 11 NORTH, RANGE 65 EAST, M.D.B.&M.

Section 7: SW1/4NE1/4; N1/2SW1/4; NW1/4SE1/4; SE1/4NE1/4; (Upper Cattle Camp Spring)

TOWNSHIP 11 NORTH, RANGE 64 EAST, M.D.B.&M.

Section 12: NE1/4SE1/4; SW1/4SE1/4; NE1/4SW1/4; NW1/4SE1/4; (Lower Cattle Camp Spring)

EXCEPTING FROM PARCEL 8 an undivided ½ interest in and to all gas and oil reserves lying in and under said land as reserved by Eugene L. Peacock and Sabra Peacock, husband and wife in deed recorded September 27, 1965 in Book 276, Page 485, Real Estate Records, White Pine County, Nevada.

PARCEL 9:

An undivided one-third interest in a .242614 undivided interest in the hereinafter described property:

TOWNSHIP 12 NORTH, RANGE 65 EAST, M.D.B.&M.

Section 17: E1/2SE1/4;
Section 21: SE1/4NE1/4; SE1/4NW1/4;
Section 22: SE1/4SW1/4;
Section 26: NE1/4SW1/4;
Section 28: SW1/4SE1/4;
Section 35: SE1/4NW1/4;

TOWNSHIP 11 NORTH, RANGE 65 EAST, M.D.B.&M.

Section 7: SW1/4NE1/4; N1/2SW1/4; NW1/4SE1/4; SE1/4NE1/4;

TOWNSHIP 11 NORTH, RANGE 64 EAST, M.D.B.&M.

Section 12: NE1/4SE1/4; SW1/4SE1/4; NE1/4SW1/4; NW1/4SE1/4;

PARCEL 10:

All of Lots 4 and 5, in Block 15, in the Lund Ten-Acre Plat Survey, County of White Pine, State of Nevada.

EXCEPTING THEREFROM all that certain real property more particularly described as follows:

Parcel A:

That certain parcel of land being a portion of Lot 4, in Block A, of Lund Ten-Acre Plat, conveyed to the State of Nevada, Department of Highways, by Deed recorded February 22, 1963, in Book 252, Page 272, Real Estate Records, White Pine County, Nevada.

Parcel B:

That certain parcel of land being a portion of Lots 4 and 5, in Block 15, of Lund Ten-Acre Plat conveyed to the State of Nevada, Department of Highways, by Deed recorded March 20, 1961, in Book 252, Page 468, Real Estate Records, White Pine County, Nevada.

Parcel C:

Beginning at the Northwest Corner whence the East 1/4 Corner of Section 20, TOWNSHIP 12 NORTH, RANGE 62 EAST, M.D.B.&M., bears North 11°18'13" East, 808.41 feet distant,

THENCE North 89°50'17" East, 285.06 feet;

THENCE South 27°59'43" East, 258.98 feet along the West Right-of-Way line of State Route 38;

THENCE South 89°50'17" West, 405.96 feet to the Southwest Corner of Lot 4, Block 15 of the Lund Ten-Acre Tracts;

THENCE North 00°09'43" West, 229.02 feet along the West Side line of Lot 4, Block 15, of the Lund Ten-Acre Tracts to the point of beginning being a portion of Lot 4, Block 15 of the Lund Ten-Acre Tracts.

Parcel D:

Beginning at the Southwest Corner whence the East 1/4 Corner of Section 20, TOWNSHIP 12 NORTH, RANGE 62 EAST, M.D.B.&M., bears North 11°18'13" East, 808.41 feet distant;

THENCE North 00°19'43" West, 539.87 feet along the West Side line of Lot 4 and 5, Block 15 of the Lund Ten-Acre Tracts;

THENCE South 27°59'43" East, 610.50 feet along the West right-of-way line of State Route 38;

THENCE South 89°60'17" West, 285.06 feet to the point of beginning being a portion of Lots 4 and 5, Block 15 of the Lund Ten-Acre Tracts.

FURTHER EXCEPTING FROM Parcel 10 all oil and gas lying in and under said land.

PARCEL 11:

All of Lots 14, 15 and 16, in Block 8, in the Lund Ten-Acre Plat Survey, County of White Pine, State of Nevada.

The South 510 feet of Lot 15, in Block 9, in the Lund Ten-Acre Plat Survey, County of White Pine, State of Nevada.

PARCEL 12:

**ALTA Commitment (6/17/06)**

All of Lots 8 and 9 of Block 6A, Lund Ten Acre Plat, being a part of Section 31, Township 12 North, Range 62 East, M.D.B.&M.

**Type of Dwelling:**
**Purported Address:**

ALTA Commitment (6/17/06)

**SCHEDULE B**
**PART I**

Order Number: 1042858-27

Schedule B of this policy or policies to be issued will contain exceptions to the following matters unless the same are disposed of to the satisfaction of the Company:

1.  Defects, liens, encumbrances, adverse claims or other matters, if any, created, first appearing in the public records or attaching subsequent to the Effective Date but prior to the date the proposed Insured acquires for value of record the estate or interest or mortgage thereon covered by this Commitment.

2.  Taxes for the current year.

3.  Any discrepancies, conflicts, or shortages in area or boundary lines, or any encroachments or any overlapping of improvements or other boundary or location disputes (can be eliminated or amended in mortgagee's policy upon proper evidence being furnished).

4.  Restrictive covenants affecting the property described in Schedule A.

5.  Rights or claims of parties in possession, and not of record in the public records; liens, for labor, services or material or claims to same which are not of record in said records.

6.  Any roadway or easement, similar or dissimilar, on, under, over or across said property, or any part thereof and not of record in said records.

7.  Any titles or rights asserted by anyone, including but not limited to persons, corporations, governments, or other entities, to tidelands, or lands comprising the shores or bottoms of navigable rivers, lakes, bays, ocean or gulf, or lands beyond the line of the harbor or bulkhead lines as established or changed by the United States Government or riparian rights, if any.

8.  (a) Unpatented mining claims, (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water; whether or not the matters excepted under (a), (b) or (c) are shown by the public records, (d) Indian tribal codes or regulations, Indian Treaty or Aboriginal Rights, including easements or equitable servitudes.

9.  THE FACT THAT RECORD ACCESS TO AND FROM A REGULARLY DEDICATED ROAD IS NOT REFLECTED IN THE PUBLIC RECORDS OF WHITE PINE COUNTY, NEVADA.

10. Taxes for the fiscal year 2011 - 2012 have been paid full, in the amount of $72.21.    APN: Various.  Master APN:  012-460-05

11. State, County and City Taxes for the fiscal period 2011 to 2012, a lien now due and payable in the total amount of $2926.82
    PARCEL NO.: Various Master APN: 011-380-16
    1st installment of $1303.82 unpaid, delinquent 3rd Monday in August.
    2nd installment of $541.00 unpaid, delinquent 1st Monday in October.
    3rd installment of $541.00 unpaid, delinquent 1st Monday in January.
    4th installment of $541.00 unpaid, delinquent 1st Monday in March.

ALTA Commitment (6/17/06)

12. State, County and City Taxes for the fiscal period 2011 to 2012, a lien now due and payable
in the total amount of $1983.13
PARCEL NO.: 011-350-03
1st installment of $498.13 Paid
2nd installment of $495.00 Paid
3rd installment of $495.00 unpaid, delinquent 1st Monday in January.
4th installment of $495.00 unpaid, delinquent 1st Monday in March.

13. The lien, if any, of supplemental taxes, assessed pursuant to provisions adopted by the
Nevada Legislature, and as disclosed by the Nevada Revised Statutes.

14. The fact that said land was approved for agricultural use assessment for taxation purposes
by the White Pine County Assessor and lien for any deferred taxes which may be levied
against said land by reason of a change in use of said land for purposes other than
agricultural, as evidenced by document

Recorded January 13, 1999, Book 294, Page 1, Document No. 304438,
Official Records of White Pine County, Nevada.

15. The fact that said land was approved for agricultural assessment for taxation purposes by
the White Pine County Assessor and lien for any deferred taxes which may be levied
against said land by reason of a change in use of said land for purposes other than
agricultural, as evidenced by document

Recorded January 13, 1999 in Book 294 Page 217, as Document No. 304486 Official
Records of White Pine County, Nevada.

16. The fact that said land was approved for agricultural use assessment for taxation purposes
by the White Pine County Assessor and lien for any deferred taxes which may be levied
against said land by reason of a change in use of said land for purposes other than
agricultural, as evidenced by document

Recorded November 9, 2000 in Book 321 Page 129, as Document No. 310098 Official
Records of White Pine County, Nevada.

17. Any deferred taxes, interest and penalties which may be due or become due upon the
conversion of said land from agricultural or open space use to any other designated use, as
per Nevada Revised Statutes.

18. Reservations and exceptions contained in Patent from THE STATE OF NEVADA,
Recorded          : November 27, 1922, Book 82, Page 236, 264, 286, 288, 290 and 321
Patent Records of White Pine County, Nevada

Said reservation and exception recites as follows:

"…provided that all mines of gold, silver, copper, lead, cinnabar and other valuable minerals
which may exist in said tract are hereby expressly reserved."

Affects the following described land:

TOWNSHIP 12 NORTH, RANGE 65 EAST, M.D.B.&M.

Section 17:  E1/2SE1/4;
Section 21:  SE1/4NW1/4; SE1/4NE1/4;

Section 22:  SE1/4SW1/4;
Section 35:  SE1/4NW1/4;

TOWNSHIP 11 NORTH, RANGE 64 EAST, M.D.B.&M.

Section 12:  W1/2SE1/4; NE1/4SE1/4;

TOWNSHIP 11 NORTH, RANGE 65 EAST, M.D.B.&M.

Section  7:  S1/2NE1/4; NW1/4SE1/4;N1/2SW1/4;

Affects the following described land:

19. Reservations and exceptions contained in Patent from THE UNITED STATES OF
AMERICA,
Recorded        in Book 82, Page 432, 536 and 542, Real Estate Records, White Pine
County, Nevada.

Said reservation and exception recites as follows:

". ..subject to any vested and accrued water rights for mining, agricultural, manufacturing or
other purposes, and rights to ditches and reservoirs used in connection with such water
rights, as may be recognized and acknowledged by the local customs, laws and decisions
of courts; and there is reserved from the lands hereby granted a right of way thereon for
ditches or canals constructed by authority of the United States."

Affects the following described land:

TOWNSHIP 12 NORTH, RANGE 62 EAST, M.D.B.&M.

Section 17:  NE1/4;

TOWNSHIP 12 NORTH, RANGE 65 EAST, M.D.B.&M.

Section 26:  NE1/4SW1/4;
Section 28:  SW1/4SE1/4;

20. Reservations and exceptions contained in various patents from the State of Nevada
recorded in the Office of the County Recorder of White Pine County, Nevada, which recite
as follows:

"...provided that all mines of gold, silver, copper, lead, cinnabar and other valuable minerals
which may exist in said tract, except gas, coal, oil and oil shales (Chap. 172 Stats. 1921);
and also the right of way for ditches, tunnels and telephone and transmission lines
constructed by authority of the United States are hereby expressly reserved."

Affects the following described land:

TOWNSHIP 11 NORTH, RANGE 62 EAST, M.D.B.&M.

Section 19:  S1/2SE1/4NW1/4; E1/2SW1/4;
Section 30:  NE1/4NW1/4;

21. Rights incidental to the ownership and development of the mineral interests excepted from
the land described herein.

ALTA Commitment (6/17/06)

22. A Right-of-Way over a portion of said land for highway and incidental purposes as granted to the State of Nevada by Deed recorded March 25, 1936 in Book 122, Page 30, Real Estate Records, White Pine County, Nevada.

23. An Oil and Gas Lease dated April 28, 1964, executed by OLIVER L. PEACOCK, as Lessor, and EARL M. CRANSTON, as Lessee, for the term and upon the terms, covenants and conditions therein provided, recorded June 15, 1964 in Book 219, Page 417, File No. 128821, and re-recorded February 1, 1965 in Book 267, Page 242, File No. 131462, Oil Lease Records, White Pine County, Nevada.

The present ownership of said leasehold and other matters affecting the interest of the Lessee are not shown in this Report/Policy.

24. An easement over a portion of Lot 9, Block 4-A of the Preston Ten Acre Plat Survey for pole lines and incidental purposes, together with Agreements pertaining thereto as granted to Ely Light and Power Company by Agreement recorded March 9, 1965 in Book 270, Page 423, Real Estate Records, White Pine County, Nevada.

25. An easement over Lot 4, Block 1-A of the Lund Ten Acre Plat Survey for pole lines and incidental purposes together with agreements pertaining thereto as granted to Ely Light and Power Company by Agreement recorded February 17, 1967 in Book 289, Page 264, Real Estate Records, White Pine County, Nevada.

26. An easement over a portion of said land for a ditch, pipeline, flume or water facilities system and incidental purposes as granted to THE LUND IRRIGATION AND WATER COMPANY by Deed recorded November 15, 1972 in Book 361, Page 465, File NO. 175501, Real Estate Records, White Pine County, Nevada.

27. Rights of way for any existing roads, trails, canals, ditches, flumes, conduits, pipe, pole or transmission lines on, under, over, through or across said premises.

28. An easement for electric transmission and/or distribution line or system, and incidental purposes as granted to MT. WHEELER POWER, INC., by instrument,
    Recorded         : February 4, 2004, Book 377, Page 528, Document No. 319621,
                       Official Records of White Pine County, Nevada
    Affects a portion of Section 17, Township 12 North, Range 62 East

29. A Deed of Trust to secure an indebtedness in the original amount stated herein, and/or other obligations secured thereby,
    Dated        : August 28, 2009
    Amount       : $ 550,000.00
    Trustor      : QUARTER CIRCLE FIVE RANCH, a Nevada partnership
    Trustee      : JOHN C. GIANOLI or STEPHEN MARICH
    Beneficiary  : THE FIRST NATIONAL BANK OF ELY
    Recorded     : October 15, 2009, Book 532, Page 355, Document No. 347460,
                   Official Records of White Pine County, Nevada

The holder of this note/indebtedness should be contacted for all pertinent information.

Affects a portion of said land

30. A Judgment for the amount stated herein plus accruing costs and any other amounts due thereunder, issued in the Seventh Judicial District of the State of Nevada, in and for the

ALTA Commitment (6/17/06)

31. A Judgment for the amount stated herein plus accruing costs and any other amounts due thereunder, issued in the Seventh Judicial District of the State of Nevada, in and for the County of White Pine,

    Case No.              : CV-1102026
    Against               : Quarter Circle Five Ranch, a Nevada partnership, Van J. Gardner, Rhonda Gardner, and Margaret A. Gardner
    In favor of           : The First National Bank of Ely
    Amount Stated         : $263,382.27
    Recorded              : April 6, 2011, Book 560, Page 489, Document No. 352624, Official Records of White Pine County, Nevada

32. A Judgment for the amount stated herein plus accruing costs and any other amounts due thereunder, issued in the Seventh Judicial District of the State of Nevada, in and for the County of White Pine,

    Case No.              : CV-1102026
    Against               : Quarter Circle Five Ranch, a Nevada partnership, Van J. Gardner, Rhonda Gardner and Margaret A. Gardner
    In favor of           : The First National Bank of Ely
    Amount Stated         : $918,302.62
    Recorded              : April 28, 2011, Book 561, Page 550, Document No. 352831, Official Records of White Pine County, Nevada

32. Commercial Security Agreement dated June 17, 2011 by and between Van Jeffrey Gardner, a man, and Quarter Circle Five Ranch, as Debtors, and Margaret A. Gardner, Trustee of the Gardner Family Trust, Secured Party, recorded June 22, 2011, Book 564, Page 538, Document No. 353410, Official Records of White Pine County.

33. Subject to proceedings pending in the United States Bankruptcy Court, District of Northern Nevada, a petition for Bankruptcy of which was filed,

    Case No.              : 11-52516-btb
    Filing date           : August 4, 2011
    Chapter: 12
    Petitioner            : Van Jeffry Gardner
    Trustee               : M. Nelson Enmark

ALTA Commitment (6/17/06)

**SCHEDULE B**
**PART II**

Order Number: 1042858-27
**Requirements:**

1.  Show that restrictions or restrictive covenants have not been violated.

2.  Payment to or for the account of the grantors or mortgagors of the full consideration for the estate or interest, mortgage or lien to be issued.

3.  Furnish proof of payment of all bills for labor and material furnished or to be furnished in connection with improvements erected or to be erected.

4.  Pay all general and special taxes now due and payable.

5.  **The requirement that any endorsement requests to the title policy be provided to title company for review and consideration three business days prior to closing.**

6.  **There have been NO CONVEYANCES within the 24 months preceding this Report except:**

    Document      : Deed
    From          : Quarter Circle Five Ranch
    To            : Van Jeffrey Gardner
    Recorded      : June 27, 2011
    Book          : 565
    Document No.: 353445

7.  NOTE: Any community property interest of the spouse of the vestee herein, should said vestee be a married person.

8.  Title Insurer requires delivery for review of a copy, in its entirety, of the General Partnership agreement of Quarter Circle Five Ranch, and disposition of any matters disclosed by said review.

**ESCROW/TITLE OFFICERS AND LOCATION**

**Escrow Officer: Penny Alworth**
**Northeastern Division**

**665 Campton Street**
**P.O. Box 150214**
**Ely, NV 89315**
Phone (775) 289-3074
**Title Officer: Annette Scates**
**Northeastern Division**

**810 Idaho Street**
**Elko, NV 89801**
Phone (775) 738-5181    Fax (866) 394-6991

# IMPORTANT NOTICE:

## STATUTORY REGULATION FOR RECORDED DOCUMENTS

**Effective July 1, 2003** a document submitted for recording, except maps, **MUST:**

1. Be on paper that is 8 ½ inches by 11 inches in size; and

2. Have a margin of 1 inch on the left and right sides and the bottom of each page; and

3. Have a space of 3 inches by 3 inches at the UPPER RIGHT corner of the first page; and

4. Have a margin of 1 inch at the top of each succeeding page

**LEGISLATION:** ANY DOCUMENT NOT MEETING THESE REQUIREMENTS WILL BE CHARGED AN ADDITIONAL FEE OF **$25.00 PER DOCUMENT** FOR NON-COMPLIANCE.

All documents must have the **Assessor's Parcel Number** of the property at the top left corner of the first page.

These requirements can be found in the **NRS 247.100 and NRS 111.312**

# STG Privacy Notice (Rev 01/26/09) Stewart Title Companies

## WHAT DO THE STEWART TITLE COMPANIES DO WITH YOUR PERSONAL INFORMATION?

Federal and applicable state law and regulations give consumers the right to limit some but not all sharing. Federal and applicable state law regulations also require us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand how we use your personal information. This privacy notice is distributed on behalf of the Stewart Title Guaranty Company and its affiliates (the Stewart Title Companies), pursuant to Title V of the Gramm-Leach-Bliley Act (GLBA).

The types of personal information we collect and share depend on the product or service that you have sought through us. This information can include social security numbers and driver's license number.

All financial companies, such as the Stewart Title Companies, need to share customers' personal information to run their everyday business--to process transactions and maintain customer accounts. In the section below, we list the reasons that we can share customers' personal information; the reasons that we choose to share; and whether you can limit this sharing.

| Reasons we can share your personal information | Do we share? | Can you limit this sharing |
|---|---|---|
| **For our everyday business purposes-** to process your transactions and maintain your account. This may include running the business and managing customer accounts, such as processing transactions, mailing, and auditing services, and responding to court orders and legal investigations. | Yes | No |
| **For our marketing purposes-** to offer our products and services to you. | Yes | No |
| **For joint marketing with other financial companies** | No | We don't share |
| **For our affiliates' everyday business purposes-** information about your transactions and experiences. Affiliates are companies related by common ownership or control. They can be financial and nonfinancial companies. *Our affiliates may include companies with the Stewart name; financial companies, such as Stewart Title Company* | Yes | No |
| **For our affiliates' everyday business purposes-** information about your creditworthiness | No | We don't share |
| **For our affiliates to market to you-** Affiliates are companies related by common ownership or control. They can be financial and nonfinancial companies. | Yes | No |
| **For nonaffiliates to market to you-** Nonaffiliates are companies not related by common ownership or control. They can be financial and nonfinancial companies. | No | We don't share |

| Sharing practices | |
|---|---|
| **How often do the Stewart Title Companies notify me about their practices?** | We must notify you about our sharing practices when you request a transaction. |
| **How do the Stewart Title Companies protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal and state law. These measures include computer, file, and building safeguards. |
| **How do the Stewart Title Companies collect my personal information?** | We collect your personal information, for example, when you<br><br>request insurance-related services<br><br>provide such information to us<br><br>We also collect your personal information from others, such as the real estate agent or lender involved in your transaction, credit reporting agencies, affiliates or other companies. |
| **What sharing can I limit?** | Although federal and state law give you the right to limit sharing (e.g., opt out) in certain instances, we do not share your personal information in those instances. |

[We may disclose your personal information to our affiliates or to nonaffiliates as permitted by law. If you request a transaction with a nonaffiliate, such as a third party insurance company, we will disclose your personal information to that nonaffiliate. [We do not control their subsequent use of information, and suggest you refer to their privacy notices.]

| Contact Us | |
|---|---|
| | If you have any questions about this privacy notice, please contact us at: Stewart Title Guaranty, 1980 Post Oak Blvd., Privacy Officer, Houston, Texas 77056. |